HON. F. J. MOSES, CHIEF JUSTICE.
HON. A. J. WILLARD, ASSOCIATE JUSTICE.

---

THOMAS C. JETER AND ANOTHER, PLAINTIFFS IN ERROR, *vs.* GEO. B. TUCKER, DEFENDANT IN ERROR.

Debt on sealed note. Pleas : (1) *Non est factum ;* (2) That the note was obtained by fraud, imposition, and undue influence, and was without consideration. Issues joined under both pleas. At the trial, plaintiff proved the *factum* of the note, and defendant gave evidence to sustain the allegations of the second plea. The Judge instructed the jury "that the whole law of the case was embraced in the second plea:" *Held,* That in this there was; under the circumstances, no error.

Some of the evidence given by the defendant tended to show that the mind of the maker of the note was not sound when the note was given. The Judge instructed the jury that "the note was valid and conclusive, unless the mind of the" maker of the note "was unsound :" *Held,* That in this there was error, as the jury might have found the note void for fraud, even though the mind of the maker was sound, and the instruction confined the range of their enquiry to the latter point only.

In an action at law on a sealed note given by a principal to her agent dur'ng the continuance of the agency, and expressed on its face to be "for value received in managing and supervising my farm for the last thirteen years," the plaintiff may rest his case on proof of the execution of the note. He is not bound, because fraud, undue influence, and want of consideration have been specially pleaded, to go further, and prove that a settlement was made between the parties when the note was given.

Subscribing witnesses to a will are allowed to give their opinions as to the soundness of mind of the testator when the will was executed ; but this rule does not apply to other instruments, especially to those which do not require subscribing witnesses.

BEFORE THOMAS, J., AT UNION, APRIL TERM, 1869.

This case was brought up by writ of error from the Circuit Court for the County of Union—the defendants below, Thomas C. Jeter and Mary Jeter, administrators of Fanny Tucker, deceased, being plaintiffs in error.

The action was debt, and the declaration contained two counts. The first was upon a sealed note, or single bill, alleged to have been given on the 23d March, 1853, by the intestate, Fanny Tucker, to the plaintiff below, for $6,500, payable three days after date; and the second for wages due by the intestate to the plaintiff, as her overseer, and for attending to her business from 1853 to 1857, both inclusive, at $500 per annum—the whole amount demanded under this count being $2,500.

Pleas: (1) *Non est factum;* and, (2) A special plea in confession and avoidance, as follows: "And the said Thomas C. Jeter and Mary, his wife, as administrators of Fanny Tucker, their intestate, come and defend the wrong and injury, when, and so-forth, and say that they ought not to be charged with the supposed writing obligatory, because they say that the said supposed writing obligatory was obtained by the said plaintiff of their intestate, the said Fanny Tucker, by fraud, imposition, and undue influence, and without any consideration, as must appear in this: that the said plaintiff had been employed as the agent, trustee, manager, and general superintendent of their said intestate for thirteen years, during all which time the said plaintiff sold and disposed of all the crops made on the plantation or plantations of intestate, and received the proceeds for the same; and still he, the said plaintiff, took the sealed note now in suit in full for the whole amount that could have been due the said plaintiff for his services during all the time he had acted as the agent, manager and trustee for their intestate, without having rendered any account for all the crops made on the plantations of the intestate, and accounting to their intestate for the proceeds of the said crops, as he should have done. And this the said defendants are ready to verify; wherefore they pray if they ought to be charged with the said debt by virtue of the said supposed writing obligatory."

The brief contained copies of the sealed note, the release, or certificate, hereafter mentioned, the special plea, the notice of the grounds of exception to the rulings of the Circuit Judge, the Judge's report, and the notes of evidence; but it contained no bill of exceptions.

It was proved that the single bill was lost, but a copy was produced, and the execution of the original, as stated in the first count of the declaration, was proved by W. M. Foster and L. F. Yoder, who were subscribing witnesses thereto. The consideration was declared on its face to be "for value received in managing and supervising my farm for the last thirteen years," and it bore interest from the 1st February, 1853.

An instrument under the hand and seal of the intestate, bearing the same date with the note, was, also, proved and given in evidence by the plaintiff. It certified that the intestate had "no claims against George B. Tucker for house rent or board, or for any crops which have passed through his hands during the last thirteen years of his supervising my interests; but that the same have been applied to my own purposes, to my entire satisfaction, up to this date." W. M. Foster and L. F. Yoder were, also, subscribing witnesses to this instrument, which, in the brief, was called a release.

The facts admitted, or proved, on both sides, were, that the intestate was the mother of the plaintiff; that she was a widow, and about seventy years of age in 1853; and that she died intestate in December, 1857; that she owned a plantation in Union District, where she resided, and over thirty slaves; that the plaintiff also owned a plantation, some miles distant from his mother's, and some slaves; that in 1840 he went to reside with his mother, taking his wife and several children with him; and that he and they continued to reside with her until her death; and that, during this period, he acted as the agent of his mother and general manager of all her business; and that sometimes he employed overseers for her, but, during most of the time, he acted in that capacity himself.

For the plaintiff the two subscribing witnesses to the note and release, two physicians, and several other witnesses, were examined. Their evidence tended to prove that the plaintiff attended faithfully and well to the business of the intestate; that her property increased rapidly under his management; that his services were worth $500 per annum, besides the board of himself and family; that the mind of the intestate was good, and entirely sound at the time the note was given, and that it became weak about a year before her death, and that she could not be controlled or influenced by the plaintiff. The two subscribing witnesses and the physicians were allowed to give their opinions as to the soundness of her mind.

Several witnesses were also examined for the defendants, and their evidence tended to prove that the mind of the intestate was unsound when the note was given, and that it continued so until her death; that the services of the plaintiff, as agent and manager of the intestate's business, were not worth $500 a year, and that she could easily be influenced by him.

The jury found for the plaintiff $11,000.

The defendants gave notice of their intention to sue out a writ of error, and assigned therein grounds of error, as follows:

1. Because, in the instructions of the presiding Judge to the jury on the law, there was error in stating to them that the whole law of the case was embraced within the defendant's second plea.

2. Because there was error in the presiding Judge in charging on the facts of the case in the following particulars, to wit : That the note sued on, and the accompanying release, were valid and conclusive of the whole matter, unless the old lady's mind was unsound.

3. Although there was no question of insanity or other mental disease involved in the case, the presiding Judge, nevertheless, instructed the jury that the *opinions* of the subscribing witnesses to the note and the medical witnesses should be *alone* received as testimony.

4. Because the presiding Judge refused to charge the jury that, in order to rebut the presumption of undue influence which attaches to transactions of this character between principal and agent, the burden rested upon the agent to show, either that his agency had terminated, or that he had fully accounted with his principal for all the funds that had passed through his hands during the existence of his agency.

5. Because the presiding Judge refused to charge the jury that, if they were satisfied that the plaintiff was agent of respondent's intestate, the burden of proof lay with plaintiff to show a settlement at the date of the note and release.

The report of His Honor the presiding Judge is as follows:

This action was brought upon a note and account, the items of which are set forth hereafter in a copy of the bill of particulars. The pleas were: The general issue, and a special plea, drawn many years ago, and which is appended to this report. The release spoken of in the second ground above set forth is also annexed.

There was much testimony, upon both sides, as to the failure in

mind of the old lady, and the influence which plaintiff had over her.

Defendant's counsel took the position set forth in the fifth ground, but I charged the jury that the law was set forth in the second plea of defendants, and refused to charge as they desired. There was no attempt made to prove any mistake, error, or *suppressio veri*, or *suggessio falsi* in the settlement.

I did charge the jury as stated in the second ground, but not as set forth in the third and fourth grounds. I only refused one instruction, and that is set forth correctly in the fifth ground. In the third ground, the instructions were, that subscribing witnesses and medical persons alone could speak as to their opinions, and that the other witnesses could only testify as to facts upon which they, the jury, were to form their opinion.

*Munro*, for plaintiff in error.

The rule as to *opinions* of witnesses is confined to cases of insanity, and to last wills and testaments. There was no necessity for witnesses to the note and release.—Green. Ev., § 440; *Drew* vs. *Clark*, 1 Add., 275 ; S. C., 1 Wms. on Ex'ors, 25, 33.

An agent contracting with his principal, during the continuance of the agency, contracts at arm's length, and the *onus* of proof is upon the agent.—Hill on Trusts, 161, 162 ; *Lord Selsea* vs. *Rhodes*, 1 Bligh, 1 ; *Butler* vs. *Haskell*, 4 Des., 151 ; *Miles* vs. *Erwin*, 1 Mc-Cord, Ch.; 1 Story Eq. Juris., §§ 204, 17, 19, 20, 310, 311.

Unsoundness of mind was not the only defence to the note and release in question.

The whole law of the case was not embraced within the defendant's second plea.

*Shand*, same side.

George B. Tucker was agent for his mother, and, therefore, a trustee.—Dunlap's Paley on Agency, 10 n. i., and 11; Hill on Trustees, 1 ; Story on Agency, § 9.

There is a vast difference between relationship terminated and relationship subsisting. Where agency is subsisting, all bounties from principals to agents are necessarily void.—*Hylton* vs. *Hylton*, 2 Ves., 547 ; *Gibson* vs. *Jeyes*, 6 Ves., 278 ; *Hatch* vs. *Hatch*, 9 Ves., 292 ; *Wood* vs. *Downes*, 18 Ves., 126; *Montesquieu* vs. *Sandys*, 18 Ves., 313 ; *Gale* vs. *Wells*, 12 Barb., 84 ; *Huguenin* vs. *Baseley*, 14 Ves., Jr., 299 ; *Butler* vs. *Haskell*, 4 Des.; *DeBardelben* vs.

*Beekman,* 1 Des., 346 ; Story on Agency, §§ 9 and 210 ; *Wyrtz* vs. *Thyrnes,* 2 Hill, 171 ; *Wright* vs. *Prond,* 13 Ves., 137 ; *Harris* vs. *Tremenheere,* 15 Ves., 40; *Hunter* vs. *Alkins,* 3 Mil. & K., 139.

There is an analogy of notes taken to property purchased.—*Poag* vs. *Poag,* 1 Hill, 285 ; *Wade* vs. *Lobdell,* 4 Cush., 510.

The matters at issue are not beyond the jurisdiction of a Court of Law. The plea of fraud will always receive the attention of a Law Court.—*Lowry* vs. *Pinson,* 2 Bail., 229; *Smith* vs. *Henry,* 2 Bail., 118; 2 Bail., 128 and 205 ; 2 Kent, 483, n. b.; *Watson* vs. *Pickett,* 2 Mill, 222 ; 3 Bl. Com., 431 ; 2 Starkie's Evidence, Part 4, 586 ; Supplement to the U. S. Digest, Title "Fraud," Nos. 261–266 and 287–290 ; *Evans* vs. *Edmonds,* 76 Eng. C. L. Rep., 777 ; *Manning* vs. *Cox,* 17 Eng. C. L. Rep., 87.

Fraud is a question of law, and not a question of fact for the jury.—*Smith* vs. *Henry,* 2 Bail., 118 ; *DeBardeleben* vs. *Beekman,* 1 Des., 346; 2 Kent Com., 518–532; 2 Starkie's Evidence, Part 4, 616, 617.

If the testimony disclosed badges of fraud, (of which there can scarcely be a question,) the Judge should have instructed the jury that, unless explained, the note and release were thereby avoided.—*Smith* vs. *Henry,* 2 Bail., 118, n.

Unsoundness of mind was not the only defence.

*Bobo, Arthur and Steedman,* for defendant in error.

If the presiding Judge had charged the jury "that the note sued on, and the accompanying release, were valid and conclusive of the whole matter, unless Mrs. Fanny Tucker's mind was unsound," there would have been no error, since, under the circumstances of this case, the issue was narrowed down to the question of the legal capacity of Mrs. T. to bind herself by her acts at the date of the note and release.

1st. There was no proof of mistake or fraud, and, in Courts of law, fraud will not be presumed.—*Kinloch* vs. *Palmer,* 1 Mill. Con. R., 216; *Munro* vs. *Gardner,* 1 Mill. Con. R., 328; *Butler* vs. *Haskell,* 4 DeS. Rep., 682.

2d. There were no circumstances in the transaction from which fraud could have been presumed, even if it would have been proper to submit a question of presumptive fraud to the jury.

There was no gross inadequacy of consideration, and *mere* inadequacy, (if this had been established,) in the absence of fraud, is no ground for setting aside a contract.—*Whitfield* vs. *McLeod,* 2 Bay, 360.

There was no proof of undue influence, or of any influence, exerted to procure the execution of the note and receipt.—*Farr* vs. *Thompson*, Cheves R., 37; *Means* vs. *Means*, 6 Rich. Law R., 21; *Lide* vs. *Lide*, 2 Brev., 404.

The receipt is evidence of an accounting between the principal and agent, and the legal representatives of the principal were bound by her admission of a settlement between them, in the absence of proof of mistake or fraud, unless there was legal incapacity to bind herself by her admissions at the date of the receipt.— *Hendrickson* vs. *Miller*, 1 McC., 296; *Edwards* vs. *Ford*, 2 Bail., 461; *Dodd* vs. *Wilson*, 1 Tread., 448.

Subscribing witnesses are called to attest not only the fact of the signing, but also the legal capacity of the maker at the time of the execution of the instrument —*Heyward* vs. *Hazard*, 1 Bay, 335.

Medical men are allowed to give their opinion of mental soundness.—Phil. Ev., 290.

Plaintiff was not bound to go behind Mrs. Tucker's receipt until there was proof of mistake or fraud.—*Hardwick* vs. *Vernon*, 4 Ves., 411; 1 Story Eq. J., §§ 204, 220.

This was not a case of great advantage gained by one standing in a fiduciary relation to another.—*Butler* vs. *Haskell*, 4 DeS., 684, 703.

Nor a purchase by trustee from *c. q. t.;* nor a gift or bounty to one standing in a confidential relation.—Hill on Trustees, 157, 161.

Nor was the receipt a confirmation of a transaction originally void or impeachable.—*Durant* vs. *Manes*, 2 Rich. Eq., 404; *Butler* vs. *Haskell*, 4 DeS., 710.

March 12, 1870. The opinion of the Court was delivered by

MOSES, C. J. It is difficult to understand, with precision, from the suggestion of errors as stated in the brief, and the report of the Judge in regard to it, the points of the charge to which error is assigned.

While the first plea only puts in issue the execution of the sealed note sued on, the comprehensive language employed in the second, filed without objection as to form, would make the defence tendered thereby want of consideration for the instrument, and fraud, imposition and undue influence in obtaining it.

Evident latitude appears to have been extended in the introduction of testimony, and hence, probably, the confusion between the apprehension of the counsel and the report of the Judge as to

what he did charge as the law of the case.    This Court, however, must be governed by his report.

The first and second exceptions will be considered together.

The first, "because there was error in the presiding Judge in saying to the jury that the whole law of the case was embraced in the defendant's second plea."

We cannot perceive how the plaintiffs (here) could have been prejudiced by such ruling, for the effect of it was only to direct the attention of the jury, after proof of the *factum* of the note, to the issue made by the pleadings.    Standing alone, after the mass of evidence which had been introduced on both sides, we do not see that it is properly the subject of objection.

The second exception is, however, in our view, well taken, and if the remarks of the Judge complained of in the first were followed by the ruling set forth in the second, we can readily understand how the jury might have been misled by supposing that they were restricted alone to an inquiry as to the mental soundness of the intestate.

The instruction to the jury, "that the note and release were valid and conclusive, unless the mind of the old lady was unsound," precluded and prohibited them from responding to the issue made under the second plea, unless the Judge intended to intimate that no fraud, imposition or undue influence was established by the evidence.    This would have been expressing his opinion on the facts, which, by law, he is not permitted to do, and we are not to suppose that he so intended.

The jury might have concluded she was of sound mind, and yet it was in their legitimate province, if so persuaded by the testimony, to conclude that the note had been obtained by means which the law would not sanction or uphold.    Fraud, imposition or undue influence would vitiate an instrument executed by a person whose soundness of mind had never been questioned.

It was for the jury to decide whether the evidence satisfied them that the note was procured through either of the agencies averred in the plea.    If there were badges of fraud disclosed by the proof, with proper explanations as to what the law considered their effect, it was for the jury to pass upon them.    There might be presented in a case such unexplained acts, circumstances or incidents as would justify the Judge in holding that, in law, they amounted *per se to* fraud.    If, however, they were complicated or contradictory, it was for the jury to draw their conclusion, and apply the law as they received it from the Bench.

The instruction of the Court, as set forth in the second exception, was error, and we adjudge the said exception to be well taken.

The fifth ground assigns as error "the refusal of the Judge to charge that if the jury were satisfied that the plaintiff (below) was agent of defendant's intestate, the burthen of proof lay with the plaintiff to show a settlement at the date of the note and release," and this, we hold, is not well founded. An agent is one so necessary in the business and transactions of mankind, involving, with his principal, a relation of such implicit confidence, and imposing therefrom a position of such commanding influence, that the guards and securities with which the Courts of Equity surround those whose rights and interests are subject to some trust, either express or constructive, to some extent attach to a person who is empowered by another to act for him, either generally or in a particular matter. These Courts enforce what has been not inaptly called "a technical morality;" and, where an advantage has been gained by a breach of confidence, interfere by acting directly on the instrument, and grant relief by avoiding it. In general, they throw the burthen on him who claims the gift, or bounty, or benefit, to show the perfect fairness of the transaction. Unreasonable advantages are not upheld, unless it is apparent that the utmost good faith has been exercised where the confidence has been reposed.

Notwithstanding the application by equity of the principles which it thus administers to transactions between agent and principal, it has not carried the doctrine to the extent of requiring the agent, where a written acknowledgment of a sum due and owing to him has been made by the principal, to show the good faith and honesty of the transaction, before it has been in some way assailed by proof.

It holds a different rule as to the burthen of proof, where obligations purporting to be for value received are the subject of its inquiry.

Though the agent may be considered as a trustee, and his acts viewed with jealousy, yet he will be entitled to credit for notes of his principal, payable to himself during the agency, without showing their consideration, unless there be evidence to impugn them.— *Poag* vs. *Poag*, 1 Hill Ch., 285 ; *Lever* vs. *Lever*, 2 Hill Ch., 158 ; *Wardlaw* vs. *Gray*, Dud. Eq., 85.

In *Poag* vs. *Poag*, Harper, J., in delivering the opinion of the Court, says : "A note given is evidence of an account settled, and a balance acknowledged. In such a case as the present, when the principal

is shown to be a weak man, hardly capable of transacting his business, such transactions are regarded with jealousy, as in the instance of a guardian settling with his ward just after he comes of age; and slight evidence will be sufficient to throw the burden of proof on the agent."

If such is the exception in Equity, how stands the matter in the Court of Law, as applicable to the present case? The note is not only under seal, which, of itself, imports a consideration, but it expresses on the face to be for value received. According to the rules of pleading there prevailing, when the plaintiff proves its execution he has done all they require, and the _onus_ is cast on the defendant to avoid it by such testimony as may be admissible under its plea, to which the plaintiff has the right to reply. The action is brought to enforce the contract, according to the terms of it; and yet it is insisted that, after proving it, which would entitle the plaintiff to a verdict, if the case rested there, he is not only to assume a further burthen, but one which the course of the pleadings throws on the defendant.

It does not appear to the Court how, under the state of the pleadings, the plaintiffs in error can raise any question touching the effect of the release. No set-off was pleaded, or notice of discount given by them. If the note was held valid by the jury, the defendants below could not reduce the amount to which the plaintiff there was entitled, by showing any indebtedness to their intestate for money received on her account or otherwise. It might have been used as a circumstance, the weight of which was to be estimated by the jury, connected with the other testimony under the special plea, but could be of no avail in reducing the amount claimed under the note, if the proof established its validity.

We are not impressed with the error assigned in the fifth exception.

Although the presiding Judge reports that he did not charge the jury as stated in the third exception, to wit: "That the opinions of the subscribing witnesses to the note and the medical witnesses should be alone received as testimony;" yet he says "that his instructions were that subscribing witnesses and medical persons alone could speak as to their opinions, and that the other witnesses could only testify as to facts upon which the jury were to form their opinion."

The opinions of the subscribing witnesses to a will are allowed where the question involves the soundness of the mind of the testa-

tor at the time of the execution of the will.—1 Green. Ev., § 440. They are as watchers, designed by the law "to ascertain and judge of his capacity." The very nature of the act in which they participate, to make the instrument complete as to form, directs and leads their attention to his mental condition. The rule has never been extended to other instruments, and certainly not to those whose valid execution does not require a subscribing witness. Experts, too, are allowed to give their opinion in the particular matters as to which they are supposed to be skilled; but those who are not presumed to have acquired, by study or practice, any higher claim to knowledge than the unlearned or inexperienced, though they may testify to facts from which they may deduce and express an opinion, yet such mere opinion is not, of itself, entitled to acknowledgment or respect, and is only appreciated and accepted by the jury if the conclusion is the same to which they would arrive from the influence of the facts disclosed.—See *Seibles* vs. *Blackwell*, 1 McM., 56.

The ruling thus made, under the exception referred to, is not sustained by this Court.

It is ordered, that the judgment be set aside, and the cause remanded to the Circuit Court, with instructions to issue a *venire facias de novo*.

*Willard*, A. J., concurred.